UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| MAMA BEARS OF FORSYTH COUNTY, ALISON HAIR, and CINDY MARTIN, <br><br> *Plaintiffs*, <br><br> v. <br><br> WESLEY MCCALL, Chair, Forsyth County Board of Education, in his official and individual capacities; FORSYTH COUNTY SCHOOLS; KRISTIN MORRISSEY, Vice Chair, Forsyth County Board of Education, in her official and individual capacities; TOM CLEVELAND, Member, Forsyth County Board of Education, in his official and individual capacities; LINDSEY ADAMS, Member, Forsyth County Board of Education, in her official and individual capacities; and DARLA LIGHT, Member, Forsyth County Board of Education, in her official and individual capacities, <br><br> *Defendants*. | Case No. __2:22-CV-142-RWS__ |

**COMPLAINT FOR
<u>DECLARATORY, INJUNCTIVE, AND OTHER RELIEF</u>**

## INTRODUCTION

People cannot fairly pass judgment on books that they haven't read. And when a school's judgment as to which books young children should read is the subject of political debate, the First Amendment protects parents' right to read aloud from these books, as well as the public's right to hear the language at issue. But the Forsyth County School Board, embarrassed by debate about its choices, has gone so far as to silence and banish from its meetings any parent who simply reads aloud from its schools' library books.

Plaintiffs—mothers who wish to protect their young children from Defendants' questionable choices—want to exercise their right to criticize the placement of pornographic books in school libraries by accurately reading those books aloud at public meetings. The books' language, after all, best illustrates why the parents contend the books are inappropriate for school. Plaintiffs want to read these books aloud because they want to elicit in these elected officials, and in their fellow citizens participating in the debate, the same emotions that struck them when they first read these words; embarrassment and motivation to action. They want their audience, including elected board officials, to hear the jarring, unsettling, and sexually graphic words in their original medium. If Plaintiffs cannot read these

excerpts, then the power of their message is lost, indeed, the message itself is censored.

This lawsuit does not try to resolve the question of which books should be available in school libraries, but instead addresses unlawful attempts to sanitize how parents speak about those books in the presence of elected officials and other adults. The First Amendment guarantees Plaintiffs' rights to speak out and petition the government about which books belong in school libraries, and to do so by reading from those books during board meetings. The school board may find this language offensive, but the law is clear: giving offense is a First Amendment-protected viewpoint. The Court should put an end to Defendants' unconstitutional censorship of Plaintiffs' speech.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action challenges Defendants' violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983.

2.     Venue lies in this Court per 28 U.S.C. §§ 1391(b)(1) and (b)(2) because all the parties are residents of this judicial district and the events giving rise to these claims occurred and are occurring in this judicial district.

THE PARTIES

3.     Plaintiff Mama Bears of Forsyth County ("Mama Bears"), is an unincorporated association whose mission is to organize, educate, and empower parents to defend their parental rights.

4.     Plaintiff Alison Hair is a natural person and a citizen of Georgia and the United States, residing in Forsyth County, Georgia. She is a resident of the Forsyth County School District. She is also the mother of a school-aged child who at one time attended a school operated by Forsyth County Schools. Hair is a member of Mama Bears.

5.     Plaintiff Cindy Martin is a natural person and a citizen of Georgia and the United States, residing in Forsyth County, Georgia. She is a resident of Forsyth County School District. She is the mother of a school-aged child that attends a school operated by Forsyth County Schools. Martin is the Chair of Mama Bears.

6.     Defendant Forsyth County Schools ("FCS") is a school district that operates the public schools of Forsyth County, Georgia. FCS has an elected five-member Board of Education, which has the primary role of legislating the school system's policies and transacting business "pertaining to the public schools." O.C.G.A. § 20-2-58 (2022). The Board plays a critical role in setting

"policies that lead to the operation and success of local school systems."

O.C.G.A. § 20-2-49 (2020).

7.     Defendant Wesley McCall is the Chair of the Forsyth County Board of Education. He is sued in his official and individual capacities.

8.     Defendant Kristin Morrissey is the Vice Chair of the Forsyth County Board of Education. She is sued in her official and individual capacities.

9.     Defendant Tom Cleveland is a member of the Forsyth County Board of Education. He is sued in her official and individual capacities.

10.     Defendant Darla Light is a member of the Forsyth County Board of Education. She is sued in her official and individual capacities.

11.     Defendant Lindsey Adams is a member of the Forsyth County Board of Education. She is sued in her official and individual capacities.

FACTS

*The Board's Public Participation Policy*

12.      "Each local board of education shall provide a public comment during every regular monthly meeting." O.C.G.A. § 20-2-58. (2020).

13.     The Forsyth County Board of Education's (the "Board") Public Participation Policy allows members of the public to address the Board.

14.     A true and correct copy of the Public Participation Policy is attached as Exhibit 3.

5

15.     The Board requires that those who wish to speak at the public comment period must first "read[] and acknowledg[e] acceptance [of the Public Participation Policy] prior to speaking" and "attest that they understand and will abide by this policy." Ex. 3.

16.     Individuals wishing to speak at the public comment period must be recognized by the Chair are allotted three minutes of speaking time. The Chair has discretion to extend that time.

17.     Under the Public Participation Policy, the Board Chair may "enforc[e] this policy and speakers who are found in violation will have their allotted speaking time immediately concluded." In addition, those who fail to abide by the policy may "forfeit[] the right to participate in future board meetings." Ex. 3.

18.     Under the Board policy "[s]peakers are asked to keep their remarks civil. Profane, rude, defamatory remarks and personal attacks will not be allowed." Ex. 3. McCall interprets the Public Participation Policy as requiring "that you don't call out any board member by name and that you don't make any direct comment to them so that we all feel respectful." Forsyth County Schools, March 15, 2022 Meeting Public Comment, https://tinyurl.com/24br38ax at 1:09:25–1:09:36 (last visited July 10, 2022).

19.     Under the Board's policy, "[t]he Board will not respond to comments made by the speaker during public participation unless they chose to ask questions." Ex. 3.

20.     The Board's policy is to be enforced by the Chairman of the Board, and any "speakers who are found in violation will have their allotted speaking time immediately concluded." Ex. 3.

21.     The Board's policy also states that "[f]ailure to abide by this policy may result in forfeiture of the right to participate in future Board meetings." Ex. 3.

*Mama Bears*

22.     Protecting the innocence of Forsyth County's children is central to Mama Bears and its members. Barring the availability of pornographic materials in school libraries is among the group's chief concerns.

23.     Mama Bears is comprised of parents united to drive change in an educational system they feel has not been responsive to their requests as individual parents.

24.     Mama Bears members spend many hours every week researching the educational materials available to their children through the classrooms, curriculums, and libraries of FCS. They began to do so after they discovered that pornographic books in the FCS libraries were readily available to their

children. They found the contents of these books to be shocking. This motivated them to advocate for these books' removal from the schools.

25.    Mama Bears members, including the individual plaintiffs, have challenged the presence of books found in FCS schools through a process called a "book challenge." A "book challenge" commences when an individual sends a Media Center Materials Appeal Form to the school. The school passes the appeal form to a committee which then has 45 days per book to complete a review.

26.    A true and correct copy of the Media Center Materials Appeal Form is attached as Exhibit 4.

27.    Under the book challenge policy, only one book may be reviewed at a time in any individual school.

28.    The Mama Bears have identified over one hundred books they believe are inappropriate.

29.    To have all of these books reviewed through a challenge under this procedure would take between seventy to twenty-five years, assuming no new books were added.

30.    Challenged books are still available to children during the challenge's pendency.

31.    The Mama Bears believe that this is an unacceptable system, which should be replaced with a more efficient system of review that would protect their children from age-inappropriate pornographic materials.

32.    Mama Bears members believe that for the Board and the public at large to understand the problem of pornographic books in their children's academic settings, they must expose these readings in a way that cannot be ignored by the Board or the public. Mama Bears believe that to draw attention to their concerns they must read the books out loud to key decision-makers and those who attend and view school board meetings, show them enlarged copies of notable pages, and post excerpts so all in the community are on notice of what Defendants allow in their children's libraries.

33.    In April 2022, Georgia enacted O.C.G.A. § 20-2-324.6(b), requiring that each board of education establish a new, streamlined complaint resolution policy for reviewing school material that may be harmful to minors by January 1, 2023. Under the new policy, school principals have ten business days to render a decision on any book challenge. *Id.* § 20-2-324.6(b)(6).

34.    "Appeals of the school's principal's or his or her designee's determinations" as to the propriety of books "shall be subject to full administrative and substantive review by the local board of education, which

shall also include the ability of the parent or permanent guardian to provide input during public comment at a regularly scheduled board meeting." O.C.G.A. § 20-2-324.6(b)(7). The "input" that the Mama Bears would "provide" during public comment would include reading aloud from books that are the subject of the Board's business under Section 20-2-324.6(b)(7).

*Defendants' unlawful censorship at school board meetings*

35. Defendant McCall presides over the public comment portion of the Forsyth County School Board meetings. He is "responsible for enforcing th[e] policy." Ex. 3.

36. The policy does not allow Defendant McCall to "respond to comments made by the speaker during public participation." In contravention of the policy, Defendant McCall often talks over speakers or argues with members of the public. Sometimes he gives speakers back their stolen time; sometimes he doesn't.

37. At the February 15, 2022 school board meeting, Defendant McCall adopted the practice of opening every Public Comment period by purporting to read from the Public Participation Policy though he added language that cannot be found in the policy. This spoken variation of the policy adds a new category of things the boards can censor: A reading from something "inappropriate."

> We want to remind our citizens that public participation is
> to present issues or concerns to the Board but in doing so
> we do not allow profane comments or comments which
> involve inappropriate public subjects. If your comments
> include anything that you might read tonight is
> enppropriate[sic] inappropriate to being stated in public
> you will be instructed to stop.

Forsyth County Schools, February 15, 2022 Meeting Public Comment,

https://tinyurl.com/5fysrzfp at 53:10–53:42 (last visited July 10, 2022).

38.    At the February 15, 2022 meeting Plaintiff Martin was stunned and

intimidated when she discovered two armed officers and a security guard at

the entrance of the meeting room.

39.    During this meeting an armed police officer stood toward the middle

of the room and drifted closer to the dais as the meeting continued, lurking

behind the speakers. A law enforcement officer can also be seen coming out of

the meeting room with the Defendants after the second recess ended.

40.    Speaking at the February 15, 2022 public comment period, Alison

Hair began to read an excerpt from the book "Extremely Loud and Incredibly

Close," found in the library of the school her child attended. Plaintiff Hair

started, "I know that you give someone a blow job by putting your penis…"

Feb. Meeting at 59:48:1:00:16.

41.    Plaintiff Hair tried to continue her public comment, but was

interrupted by McCall:

11

> So, you have, we have a couple options. One is you can continue and go back to the rules that we talked about at the beginning….Or two. We can finish now. We have other people that are younger in this and I, we understand your point…But we don't know…We have not had an opportunity to vet this. We…also have a vetting system in place…so the books are not read out loud.

Feb. Meeting at 1:00:18–1:00:46.

42.     Hair tried to continue her public comment and requested her time be returned while McCall continued to speak over her,

> Hair:    I will move on to the rest of my comments and I would like my time…To please be returned…. And how, how dare you say 'Oh well there's minors in here, wait, what is it? My son's a minor and this book that you all have copies of is in my son's middle school. So, here's what I'm here to tell you. I am here to confront evil…

> McCall:  Your time is up.

Feb. Meeting at 1:00:18–1:03:02

43.     Plaintiff Hair's time was not returned to her though McCall spoke over her or to her for more than 35 seconds of her public comment time. Feb. Meeting at 59:48–1:03:02.

44.     When Plaintiff Hair stopped speaking, Defendant McCall thanked her for being respectful. He stated "Thank you. Thank you for being respectful to the rules. Thank you for that." Feb. Meeting at 1:03:16–1:03:20.

45.     Later at that meeting, when another member of Mama Bears read the same book Alison Hair tried to read but substituted other words such as

rhyming words or one-off descriptions for the words, ass, penis, cock, cunt,

sex, and dick, she was allowed to continue reading. This speaker was allowed

to say BJ with no interruption. When asked, Defendant McCall told the

Mama Bear was told she was not allowed to say "these things." Feb. Meeting

at 1:13:57–1:15:11.

46.    Another speaker at that meeting read a book aloud and was not

interrupted when she read because she knew she had to "elaborate since we

have to monitor ourselves" she then read, "I have given a few HJ's, a few,

three or four, successful BJs." Feb. Meeting at 1:17:43–1:17:59.

47.    Cindy Martin later approached the dais and attempted to speak so

that she could address the school superintendent's unwillingness to support

efforts to remove what she saw as inappropriate books in her child's school

library. The superintendent had taken the position that it was "up to the

parents" to get the materials they felt were offensive out of their children's

hands. When she tried to express criticism of the superintendent's inaction by

declaring "nothing disappoints me more than a person who's been placed in a

position of power and does not use that power to promote good," McCall

interrupted her, and told her to "be respectful." Feb. Meeting at 1:06:51–

1:07:30

48.    Martin then attempted to read a pornographic book that Forsyth schools made available to children. After expressing concern that she was not sure if the Board would allow her to read it, she tried to do so anyway and replaced words she guessed might be censored with poignant pauses and initials. This made her speech less jarring and effective. As she spoke, Defendant McCall spoke over Martin and thanked her twice for being respectful. Feb. meeting at 1:06:51:1:10:03.

49.    At the March 15, 2022 school board meeting, Defendant McCall again opened the Public Comment period by purporting to read the Public Participation Policy and again adding in language that does not exist in the official policy. This time he included a prohibition on readings that might be "inappropriate to be stated in public." March Meeting at 31:11–32:54.

50.    Several speakers at the March 15, 2022 meeting asked that McCall not start their time while they praised or commiserated with the board members. These individuals were allowed the extra time to explain their views including one commentor's perspective that the Board Members are underpaid. McCall did not interrupt these speakers who praised the board. March Meeting at 1:25:12–1:29:36; 1:45:48–1:49:13.

51.     Another member of Mama Bears was interrupted and spoken over as board members argued about whether her remarks offended board policy. The speaker began by stating:

| | |
|---|---|
| Speaker: | Ms. Morrisey again chimed in stating that the attention being given to these books is quote benefitting because they can't find them anywhere to purchase….Another intriguing tibdit was when Wes McCall learned that there are quite literally no guidelines… |
| Board Member: | No, no, she can't call out the board |
| McCall: | She is stating the facts, she is stating facts. She did not… |
| Speaker: | I am not, I am not defaming. I'm simply stating that was actually something that happened in the video. [McCall and the unidentified board member continue to argue off mic about how to apply the policy]… |

March Meeting at 1:05:22–1:06:11.

52.     Later in this same meeting McCall provided a new interpretation of the Public Participation Policy, requiring "that you don't call out any board member by name and that you don't make any direct comment to them so that we all feel respectful." March Meeting at 1:09:25–1:09:36.

53.     Before entering the Board Room on March 15, 2022 Board meeting's public comment period, Plaintiff Alison Hair approached one of the armed law enforcement officers. She explained that she knew she had the right to

15

speak at the meeting but that she thought that Defendant McCall might seek to have her physically escorted from the room, and potentially arrested. She asked the officer to allow her to leave peacefully so that her child was not left alone.

54.     When it was her turn to speak, Hair began her public comment with her recognition that she believed that if she changed some words in her text she might not offend McCall and would at least be able to speak. She implored the Board to respect her First Amendment right to speak as she wishes:

> You've got a different person here tonight. You've got a mother begging, begging you all to do something…. And my First Amendment rights, I am invoking right now…. and by the way I don't have the BJ word. Don't worry. But I'm telling you, you're going to hear me out. I'm done. I am having to make a different school choice for my child, based on the unethical behavior of this board.

March Meeting at 1:19:18–1:20:30.

55.     Hair then attempted to read excerpts from another explicit book made available to children by Forsyth County Schools:

> We pushed back together feeling the warmth and silk of each other's skin. Our breaths were coming faster and harder. My mouth circles the soft skin of my breasts and I cried, arching up into her….I flip over again straddling her. I kiss my way down her breastbone. I'm taking each nipple right in between my teeth…

March Meeting at 1:20:34–1:20:57.

16

56.    As Hair tried to continue reading, Defendant McCall interrupted, asking if she had submitted the book to the school review process, and then continued to speak over her as she tried to provide her public comment. He then explained, "I can't ask you to continue Ma'am. Ms. Hair you. Ms. Hair, you, sorry. I can't…" March Meeting at 1:21:13–1:21:20.

57.    Hair tried to continue reading so that the Board would know what children had access to but McCall interrupted her and then began to argue with audience members who objected to his behavior. March Meeting at 1:21:20–1:21:33.

58.    Hair tried to re-assert her right to speak by asking McCall why he wouldn't let her read the book and demanding he return the time he had taken from her. He instead continued to demand she obey and "follow our rules." Hair protested that she did not break any rules, but Defendant McCall told her that she had used profanity when reading the book. March Meeting at 1:21:33–1:22:20.

59.    Hair tried to circle back to her statement on the books' content. Defendant McCall then called for a recess, thereby terminating her comment before her time had elapsed. McCall did not return Hair's public comment time though he argued with the audience and chastised Hair for more than

one minute and forty seconds of her allotted three minutes. March Meeting at 1:22:20–1:22:33.

60.    As she tried to speak Plaintiff Hair was aware of the armed law enforcement officer slowly approaching her on her right. Hair left as soon as the recess was called, in part due to concerns that she might be arrested.

61.    On March 17, 2022 Wes McCall sent Hair a letter banning her from attending future public meetings until she provided a guarantee in writing that she would follow the public participation rules and his directives.

62.    A true and correct copy of the letter dated March 17, 2022 which Defendant McCall sent to Alison Hair is attached as Exhibit 1.

63.    Though Hair did not attend any meetings after March 15, on May 11, 2022, the full FCS Board sent Hair a second letter, signed by each individual defendant Board member, confirming that she is banned from attending public meetings.

64.    A true and correct copy of the letter dated May 11, 2022 which the Forsyth County Board of Education sent to Alison Hair is attached as Exhibit 2.

65.    The May 11, 2022 letter noted that the Board believed her comment had not been "civil." The letter further required a written guarantee that she

18

would pledge fealty to the public participation rules and to McCall's directives to gain readmittance to Board meetings.

*The continuing impact of*
*Defendants' censorship of Plaintiffs' speech.*

66.    Cindy Martin intends to continue speaking before the Forsyth County Board of Education about (among other subjects) which books should be available in schools, including in the course of appeals pursuant to O.C.G.A. § 20-2-324.6(b)(7). However, Defendants' censorial behavior, including its banishment of Alison Hair, has caused Martin to refrain from speaking at Board meetings altogether. Defendants' censorship would force Martin to use less effective speech, and to forego some aspects of her message entirely for fear of being chastised, arrested, physically removed from board meetings and banished from attending further meetings. Martin cannot deliver the full impact of her message if she cannot use the actual words that appear in the books being discussed. The words are jarring and explicit, and for the Board and the public to understand the full impact these words have on the reader she must be able to say them as they were written and meant to be read. Martin believes that the actual, unsanitized, words are essential to promoting her viewpoints about the books.

67.     Other members of the public, including Mama Bears members, are modifying their speech before the Forsyth County Board of Education or foregoing speaking altogether because they reasonably fear that they would be censored, ejected from meetings, and banished from attending future meetings if they read aloud from challenged books or otherwise engage in any political speech that would run afoul of Defendants' censorial practices and policies.

68.     Like Cindy Martin, Alison Hair intends to continue speaking before the Forsyth County Board of Education about (among other subjects) which books should be available in schools, including in the course of appeals pursuant to O.C.G.A. § 20-2-324.6(b)(7). However, Hair refrains from attending Board meetings altogether because she reasonably fears arrest and prosecution if she attempts to attend meetings, considering Defendants have banished her from attendance unless she renounces her intent to speak as she wishes and violates the dictates of her conscience by submitting to Defendants' violation of her rights.

CLAIMS FOR RELIEF

COUNT ONE
RIGHT OF FREE SPEECH
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
FACIAL CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

69.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 68.

70.    The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The government may not silence speech because it criticizes government officials or employees, or their favorite ideas or initiatives, even if that speech does so in ways that many people may find unpleasant. Allegations that speech is disrespectful, or offensive do not justify censorship of public speech.

71.    First Amendment protections extend to public speech at school board meetings, by operation of the Fourteenth Amendment.

72.    "[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain

subjects." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802

(1985) (citation omitted). A limited public forum exists where a government

has reserved a forum for certain groups or for the discussion of certain topics.

*See Cambridge Christian Sch., Inc. v. Fla. High Sch. Ath. Ass'n*, 942 F.3d

1215, 1237 (11th Cir. 2019).

73.   A school board meeting at which the public is allowed to speak is a

designated public forum limited to discussing school operation and

governance. *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir.

2017). The public comment period at FCS school board meetings is a limited

public forum for Forsyth County residents and taxpayers to discuss matters

of public concern related to the school district.

74.   Content restrictions on speech are "permitted in a limited public

forum if [they are] viewpoint neutral and reasonable in light of the forum's

purpose." *Barrett*, 872 F.3d at 1225.

75.   "Although a limited public forum may rightly limit speech at the

forum to only certain content, the First Amendment does not tolerate

viewpoint-based discrimination against speech within the scope of the

forum's subject matter. Viewpoint discrimination occurs when the specific

motivating ideology or the opinion or perspective of the speaker is the

rationale for the restriction." *Id*. at 1225 n.10 (internal quotation marks and citations omitted).

76.    The Public Participation Policy's prohibitions on personally addressing school board members; and on speech deemed to be "[un]civil," "[p]rofane," "rude," "defamatory," or "personal attacks," violate the First Amendment right of free speech on its face by impermissibly discriminating against speech on the basis of viewpoint. The First Amendment protects speech that constitutes a personal attack, or that is uncivil, profane, or rude. And while defamation is not protected speech, Defendants are not qualified to adjudicate on the spot, whether any assertions of fact a speaker might make about another person are true. Defamation claims belong in court.

77.    By enforcing the Public Participation Policy, Defendants, under color of law, deprive Plaintiffs of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT TWO
RIGHT OF FREE SPEECH
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

78.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 68.

79.     All of Plaintiffs' public speech at Board meetings is fully protected by the Free Speech Clause of the First Amendment.

80.     At no point did Defendants terminate or censor Plaintiffs' speech on the basis of time or irrelevance to the forum or actual lack of decorum. Defendants censored Plaintiffs' speech because they disagreed with it. "[T]he public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (internal quotation marks and citation omitted).

81.     As-applied against the Plaintiffs, the Public Participation Policy's time limits are uneven. Defendants allowed speakers who have views that praise the board and commiserate with them more time for public comment. This violates Plaintiff's First Amendment right of free speech by impermissibly discriminating against speech on the basis of viewpoint.

82.     As-applied against Plaintiffs, the Public Participation Policy's prohibition of speech deemed "[un]civil," "[p]rofane," "rude," "defamatory," or

"personal attacks," violated and continues to violate Plaintiffs' First Amendment right of free speech by impermissibly discriminating against speech on the basis of its viewpoint.

83.    As-applied against Plaintiffs, the Public Participation Policy's prohibitions on personally direct comments, "defamatory remarks" and on "personal attacks" that amount to a prohibition on mentioning individuals, including school officials and employees, violate Plaintiffs' First Amendment rights because prohibiting the discussion of individuals is not reasonable in light of the public comment period's purpose. Discussion of matters germane to the schools' operations will necessarily require referencing individuals— especially members of the school board.

84.    By enforcing the Public Participation Policy against Plaintiffs, Defendants, under color of law, deprived and continue to deprive Plaintiffs of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to nominal damages, declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT THREE
RIGHT TO PETITION
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
FACIAL CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

85.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 68.

86.     "The right to petition the government for a redress of grievances is one of the most precious of the liberties safeguarded by the Bill of Rights, and is high in the hierarchy of First Amendment values. The right to petition the government for redress of grievances is such a fundamental right as to be implied by the very idea of a government, republican in form." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288–89 (11th Cir. 2019) (internal punctuation marks and citations omitted).

87.     The public comment period at school board meetings is a forum that enables people to exercise their fundamental First Amendment right to petition their elected government officials.

88.     The Public Participation Policy's prohibition on personally addressing school board members; and on speech deemed "[un]civil," "[p]rofane," "rude," "defamatory" or "personal attacks," violate the First Amendment right to petition on its face by impermissibly prohibiting and limiting petitions on the basis of viewpoint. These prohibitions are not

26

designed to confine the forum to the limited purposes for which it was

created. Instead, the Public Participation Policy suppresses petitions for

redress and make it harder for citizens to criticize government officials and

ask for changes in policy.

89.    By enforcing the Public Participation Policy, Defendants, under

color of law, deprive Plaintiffs of the right to petition in violation of the First

and Fourteenth Amendments to the United States Constitution. Accordingly,

Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are

entitled to nominal damages, declaratory and preliminary and permanent

injunctive relief against continued enforcement and maintenance of

Defendants' unconstitutional customs, policies, and practices; and attorney

fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT FOUR
RIGHT TO PETITION
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

90.    Plaintiffs reallege and incorporate by reference paragraphs 1

through 68.

91.    All of Plaintiffs' public speech at Board meetings is fully protected

by the First Amendment right to petition the government for a redress of

grievances.

92.     As applied against Plaintiffs, the Public Participation Policy's
prohibitions on personally addressing school board members and on speech
deemed " "[un]civil," "[p]rofane," "rude," "defamatory" or "personal attacks"
violated and continue to violate Plaintiffs' First Amendment right to petition
by impermissibly discriminating against their petitions on the basis of their
viewpoint.

93.     As applied against Plaintiffs, the Public Participation Policy's
prohibitions on personally addressing school board members, "defamatory
remarks," and "personal attacks" that amount to a prohibition on mentioning
individuals, including school officials and employees, also violate Plaintiffs'
First Amendment rights because these prohibitions are not reasonable in
light of the public comment period's purpose. Petitioning a school board for a
redress of grievances will necessarily require referencing individuals—
especially members of the Board.

94.     By enforcing these provisions against Plaintiffs, Defendants, under
color of law, deprived and continue to deprive Plaintiffs of the right to
petition in violation of the First and Fourteenth Amendments to the United
States Constitution. Accordingly, Plaintiffs are damaged in violation of 42
U.S.C. § 1983, and, therefore, are entitled to nominal damages, declaratory
and preliminary and permanent injunctive relief against continued

enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT FIVE
VAGUENESS
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

95.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 68.

96.     Because notice is the first element of due process, the Fourteenth Amendment's Due Process Clause prohibits the enforcement of vague laws. The First Amendment likewise forbids the enforcement of laws that are so vague as to chill protected speech.

97.     The Public Participation Policy's prohibitions of speech deemed "[un]civil," "[p]rofane," "rude," "defamatory" or "personal attacks" are each unduly vague, serving only to authorize Defendants' arbitrary censorship of speech they dislike. School board members openly disagree during public board meetings about how these should and do apply. These vague terms invite self-censorship by speakers so they can avoid being interrupted or cut off.

98.     By enforcing these provisions, Defendants, under color of law, deprive Plaintiffs of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to nominal damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT SIX
OVERBREADTH
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

99.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 68.

100.    The First and Fourteenth Amendment prohibit the enforcement of overbroad laws that would punish protected speech.

101.    The Public Participation Policies prohibition on speech deemed "[un]civil," "[p]rofane," "rude," "defamatory," or "personal attacks" is overly broad, sweeping in protected political speech, pure opinions, or a true statement of fact.

102.   By enforcing the provision, under color of law, deprive Plaintiffs of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to nominal damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT SEVEN
PRIOR RESTRAINT
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
CHALLENGE TO THE PUBLIC PARTICIPATION POLICY

103.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 68.

104.   By requiring Plaintiffs to "read[] and acknowledge[e] acceptance" of the policy's terms as a condition of speaking at its meetings, the Board places a prior restraint on speech. This prior restraint is unconstitutional, because the prohibitions of "[un]civil," "profane," "rude," and "defamatory" speech, and of "personal attacks," grant Defendants unbridled discretion to determine which speech may be expressed and which may not.

105.   By imposing a prior restraint on Plaintiffs' speech, and thereby subjecting their access to the forum to Defendants' unbridled discretion, Defendants, under color of law, deprive Plaintiffs of the rights to free speech and petition in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to nominal damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Mama Bears of Forsyth County, GA, Alison Hair and Cindy Martin, request judgment be entered in their favor and against Defendants as follows:

A.  An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the Public Participation Policy's prohibitions on personally addressing school board members and on speech deemed "[un]civil," "[p]rofane,"

32

"rude," "defamatory" or "personal attacks," and from discriminating on the basis of viewpoint in providing access to school board meetings;

B. An order permanently enjoying Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the Public Participation Policy's conditioning the right to speak on agreeing to the Board's viewpoint discriminatory policy;

C. An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing its prohibition of Alison Hair from attending and participating at meetings of the Forsyth County Board of Education;

D. A declaration that the Public Participation Policy's prohibitions on speech personally addressing school board members and on speech deemed "[un]civil," "[p]rofane," "rude," "defamatory," or "personal attacks," are on their face and as-applied to Plaintiffs unconstitutionally void and unenforceable, as they violate the First Amendment rights of free speech and petition and the Fourteenth Amendment's guarantee of due process against vague laws; and that Defendants' banishment of Alison Hair from public meetings violates

her First and Fourteenth Amendment rights to speech, petition, and

due process;

E.  To each Plaintiff, nominal damages in the amount of $17.91;

F.  Costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

G.  Any other relief this Court may grant in its discretion.

Dated: July 25, 2022                   Respectfully submitted,

                                       /s/ *Erika C. Birg*
                                       Erika C. Birg
                                       Georgia Bar No. 058140
                                       NELSON MULLINS RILEY & SCARBOROUGH LLP
                                       201 17th Street NW
                                       Suite 1700
                                       Atlanta, GA 30363
                                       Phone: 404-322-6110
                                       Email: *erika.birg@nelsonmullins.com*

                                       Martha Astor
                                       (*pro hac vice* to be sought)
                                       Endel Kolde
                                       (*pro hac vice* to be sought)
                                       INSTITUTE FOR FREE SPEECH
                                       1150 Connecticut Ave., NW
                                       Suite 801
                                       Washington, DC 20036
                                       Phone: 202-301-3300
                                       Email: *astorm@ifs.org*
                                       Email: *dkolde@ifs.org*

                                       *Counsel for Plaintiffs*