UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| MAMA BEARS OF FORSYTH COUNTY, *et al.* | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action File No.: 2:22-CV-142-RWS |
| WESLEY MCCALL, Chair, Forsyth County Board of Education in his official and individual capacities; *et al.* | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

There is not a First Amendment right to read ***out loud*** sexually explicit, graphic passages from a book at a board of education meeting attended by members of the public, including young children, or available livestreamed to be viewed by anyone online. Perhaps in recognition that there is no such constitutional right, Plaintiffs attempt to craft their claims under the pretense of viewpoint discrimination by the Forsyth County Board of Education ("Board"). However, the Board did not discriminate against Plaintiffs on the basis of their viewpoint nor did it restrict their

expression of those viewpoints at the Board meetings.

Plaintiffs' "viewpoint" in this case is that they oppose certain books in school libraries and that they are critical of the Board members' and the School District's handling of this issue. However, they ***were provided*** the opportunity to express that viewpoint at the Board meetings referenced in the Complaint. In fact, at the February 15, 2022 Board meeting, ***twelve*** different speakers, including Plaintiffs Hair and Martin, expressed ***this group's viewpoint***. The ***only*** restriction on ***any*** speaker was not to read any ***sexually explicit, graphic*** passages from a book. Likewise, at the March 15, 2022 meeting, many different speakers again discussed the same book banning issue, expressing both viewpoints. Similar to the February meeting, no speech was restricted other than Hair's attempt to read a sexually explicit, graphic passage.

Plaintiffs' true contention is that they should be able to read out loud sexually explicit, graphic passages from books in a limited public forum, a right that is not protected under the Constitution. This case is simply not about viewpoint discrimination. Plaintiffs' suggestion that the School District attempted to censor their viewpoint is confounding, especially since over ***twenty*** individuals, including Plaintiffs and other members of the group, had the opportunity in the two Board meetings, to express those views, at times passionately, loudly, argumentatively and

critically, as clearly shown in videos of both Board meetings.

Plaintiffs seek the "extraordinary and drastic remedy"[1] of a preliminary injunction, a rigorous standard Plaintiffs cannot meet. For these reasons and those set forth below, Plaintiffs' Motion for Preliminary Injunction [Doc. 2] must be denied.

## STATEMENT OF FACTS

**February 15, 2022 Board of Education Meeting:**

At the February 15, 2022 Board of Education meeting, during the public participation portion of the meeting, Plaintiff Hair, in a raised voice, at times screaming, vociferously *criticized* the School District for allowing certain books in school libraries [1:01:04-1:03:03][2]. There was no attempt by any Board member to stop that criticism during those two minutes, even as she stated she was there "to confront evil" and proceeded to accuse Board members with unfounded allegations. Rather, the only thing she was prevented from doing was reading the passage about "blow jobs." [1:00:14-1:00:17]. She was explicitly informed that she could finish with her statement, which she did. When she finished her criticism and unfounded

---

[1] "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

[2] As cited in Plaintiffs' Brief, video of the Board's February 15, 2022 meeting can be accessed at https://www.youtube.com/watch?v=nFDUsXmKw1s

3

accusations against the Board members, Board Chair McCall thanked her for time and the thoughts that she shared. [1:03:15-1:03:35].

Similarly, the next speaker expressed the ***same criticism*** of certain books being allowed in the schools' libraries, for the same reasons as Plaintiff Hair. [1:04:02-1:06-28]. Notably, her expression of her viewpoint—the same viewpoint shared by Plaintiff Hair—was completely ***uninterrupted*** because she did ***not*** attempt to read any sexually explicit, graphic passages from a book. The next speaker, Plaintiff Martin, expressed this group's viewpoint for her full three minutes. [1:06:53-1:10:03]. In fact, she read passages from books she opposed but left out the graphic, sexually explicit words. [Id.]. The only interruption, of less than 2 seconds, occurred when she criticized a specific employee, the Superintendent. The Board Chair simply reminded Ms. Martin to be respectful.

The speaker after Martin shared ***the same viewpoint and criticism*** of the School District as the three speakers before her, again without any interruption from the Board since she did not read any graphic, sexually explicit passages. [1:10:30-1:13:34]. The next speaker, yet again, expressed the same viewpoint and criticism as those before her. [1:13:51-1:16:52]. Like Plaintiff Martin, she read passages from a book but did not include the actual graphic, sexually explicit words and was not interrupted while so reading. [Id.]. In fact, seven more speakers, for a total of

4

*twelve* speakers, shared the same viewpoint as the speakers before them, including the same viewpoint shared by Plaintiffs, again without any interruption from the Board. [1:17:25-1:19:22; 1:19:45-1:22:13; 1:22:40-1:25:54; 1:37:24-1:39-38; 1:39:58-1:43:05; 1:53:40-1:56:44; 1:57:18-2:00-25].

There were several speakers who *criticized* the School District for *removing* certain books from school libraries. [57:45-59-25; 1:26:09-1:28:55; 1:32:20-1:35-09; 1:50:43-1:53:11]. Both viewpoints on this issue were made by the speakers at this Board meeting.

**March 15, 2022 Board of Education Meeting:**

During the public participation portion of this Board meeting, numerous speakers again raised the issue of book banning, providing perspectives from *both viewpoints*. Prior to Plaintiff Hair's speech at this meeting, *eight* different speakers shared viewpoints identical to those of Plaintiffs. [32:55-1:19:13][3]. Some of those eight speakers had extremely critical comments about Board members, including implying that they are evil and one speaker even suggested that they were "pedophiles" for allowing the books objected by the Plaintiffs. Yet, no one's speech was restricted until halfway through Plaintiff Hair's speech at this meeting. [Id.].

---

[3] As also cited in Plaintiffs' Brief, video of the Board's March 15, 2022 meeting can be accessed at https://www.youtube.com/watch?v=VidLLqmD-4A

Plaintiff Hair expressed her viewpoint for approximately 1 minute, 33 seconds without interruption. [1:19:13-1:20:46]. However, she was interrupted when she read a sexually explicit, graphic passage. [1:20:47]. When Board Chair McCall gaveled and tried to stop her from reading the passage, Plaintiff Hair raised her hand, yelled out "Don't Even" and continued to read. [1:20:47-1:21:22]. Several people in the audience and Hair began to yell at the Board, and McCall tried to maintain control of the Board meeting. [1:21:23-1:22:01]. He asked Hair if she will follow the rules. [1:22:02]. After more yelling by her and others in the audience, McCall called for recess and had the room emptied. [1:22:35]. Following the recess, more speakers came back to speak to the Board individually to provide their viewpoints, this time without anyone in the audience. [1:22:37-1:57:10]. Again, both viewpoints were shared with the Board, without any interruption since no one attempted to read sexually explicit passages. [Id.].[4]

## ARGUMENT AND CITATION OF AUTHORITY

In order to obtain preliminary injunctive relief, Plaintiffs must produce evidence demonstrating the following elements: (1) a substantial likelihood of success on the merits of their claims; (2) that Plaintiffs will suffer irreparable

---

[4] Defendants note that the issue of book banning has been discussed in several other Board meetings, where members of the public provided their different viewpoints.

6

injury unless an injunction is issued; (3) that the threatened injury to Plaintiffs outweighs any harm the proposed injunction might cause the School District; and (4) that the requested injunction would not be adverse to the public interest. Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp., 715 F.3d 1268, 1273–74 (11th Cir. 2013). As noted above, a preliminary injunction is an "**extraordinary and drastic remedy,**" not to be granted unless Plaintiffs can *clearly establish* the burden of persuasion as to **each of the four** elements. Siegel, 234 F.3d at 1176. In this case, Plaintiffs cannot produce evidence that satisfies *any* of the elements.

I. **There is not "substantial likelihood" that Plaintiffs can succeed on any of the claims raised in the Complaint.**

   A. <u>There was no viewpoint discrimination.</u>

The Eleventh Circuit very recently reaffirmed the standard for analyzing First Amendment rights in a limited public forum, which Plaintiffs concede is the applicable forum during public participation. In Cardinale v. City of Atlanta, 2022 WL 2983366, at *1 (11th Cir. July 28, 2022), the Court reiterated that in a limited public forum, the government "may be justified in reserving its forum for certain groups or for the discussion of certain topics." (quoting Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106 (2001). Restriction on speech is permissible as long as it does not "discriminate against speech on the basis of viewpoint," and it must "be

reasonable in light of the purpose served by the forum." Id. Plaintiffs acknowledge this standard but insist that they faced viewpoint discrimination.

However, the videos of both Board meetings, as summarized above, unequivocally demonstrate that there was no such viewpoint discrimination. Rather, Plaintiffs Hair and Martin and others in their group, along with a host of others who share their same viewpoint, were provided multiple opportunities to express their viewpoint, which at times were harsh and critical of the Board and the School District. As noted above, ***over twenty*** speakers, in the two Board meetings, expressed their viewpoint: demanding certain books be banned from school libraries and criticism of the Board and School District for not doing so. The ***only*** restriction was content based—***not viewpoint***: they could not read sexually explicit, graphic passages from books. This restriction, given the nature of board of education meetings where very young children may be in attendance or watching livestream with their parents, is certainly reasonable.

Plaintiffs' proposed "justification" for reading these passages out loud at a Board meeting rests on the premise that the books are available in libraries for students to check out so they should be able to read out loud from them at the meetings. However, this premise ignores two facts. The challenged books are in middle and high school libraries, but there are younger-age children who could be

watching the meeting. More importantly, there is a significant difference between reading something silently and hearing it spoken. By Plaintiffs' logic, it would be completely fine to read out loud a passage from the Adventures of Huckleberry Finn—one in which the "n-word" is repeated throughout that passage—simply because that derogatory word is repeated in various parts of a book taught in virtually every high school American literature class in America. Surely, a board of education is not violating anyone's First Amendment rights by prohibiting the reading of such a passage at its public meetings. Plaintiffs want to be able to read the sexually explicit, graphic passages for shock value. The prohibition of that, however, does not constitute viewpoint discrimination.

    B.    <u>The District's public participation policy on its face and as applied did not violate the First Amendment.</u>

Plaintiffs certainly do not cite any authority from anywhere that the prohibition of reading sexually explicit material out loud in a limited public forum constitutes viewpoint discrimination. Plaintiffs cite <u>Ison v. Madison Loc. Sch. Dist. Bd. of Educ.</u>, 3 F.4th 887, 891 (6th Cir. 2021), a Sixth Circuit decision that involved parents appearing at school board meetings to criticize the Board's handling of gun-related issues after a shooting at one of the schools. Obviously, that case does not involve the real issue involved in this case: whether the

9

prohibition of reading out loud sexually explicit, graphic passages constitute viewpoint discrimination.

The Court in Ison did consider the board policy's restrictions on "abusive," "personally directed," and "antagonist" statements and determined that those restrictions do constitute viewpoint discrimination. However, a simple viewing of the videos reveals that the Plaintiffs and other speakers were "abusive" or directed personal comments and criticism of the Superintendent or an individual Board member, and made numerous "antagonistic" statements. Yet, none of that speech was restricted during these two meetings. Plaintiffs appear to take issue with the comment McCall made, "let's be respectful." Such a comment hardly constitutes a speech restriction. There is no evidence showing that the speakers could not express their viewpoints or that a side comment by a Board member impeded what the individual wanted to say. What the video evidence shows is that the ***only*** restriction imposed during the meetings was not to read sexually explicit, graphic passages.

Plaintiffs also take issue with references to "civil, rude, defamatory, personal attacks" contained in the Board's policy. Defendants note that at the Board's August 16, 2022 meeting, the Board discussed a revised Public Participation Policy and the Rules of Conduct for that Policy.

https://simbli.eboardsolutions.com/SB_Meetings/ViewMeeting.aspx?S=4069&MID=102673.  The proposed Revised Policy can be accessed at:

https://simbli.eboardsolutions.com/Meetings/Attachment.aspx?S=4069&AID=1424871&MID=102673.  The proposed Revised Rules of Conduct can be accessed at:

https://simbli.eboardsolutions.com/Meetings/Attachment.aspx?S=4069&AID=1424872&MID=102673.  Both the proposed Revised Policy and Rules of Conduct are on the School District's website for public comments, and they will be voted on in the September Board meeting.  Neither the proposed revised Policy or Rules of Conduct contain the references to "civil, rude, defamatory, personal attacks," and thus, Plaintiffs arguments on these terms would be moot under the soon-to-be new Policy and Rules.  Nonetheless, what is most important in this case is that there is no evidence that anyone's viewpoint was suppressed at the two meetings for being uncivil, or rude, or defamatory, or were personal attacks.  In fact, the video evidence shows that there were plenty of viewpoints expressed that fall under any of those four categories at the two Board meetings.

    Plaintiffs also contend that the prohibition on profane speech is unconstitutional and makes the general assertion that the "First Amendment protects profanity."  [Doc 2-1 at 22 (numbered 14 on Plaintiffs' Brief)].  However, Plaintiffs do ***not*** cite ***any*** caselaw supporting the proposition that profanity is

protected speech in a limited public forum or that the prohibition of profanity is viewpoint discrimination. Another division of this Court, recently in Rubin v. Young, 373 F. Supp. 3d 1347, 1353 (N.D. Ga. 2019), reasoned that a speech restriction on profanity in a ***public forum*** is ***content-based*** and applied strict scrutiny to determine if the restriction is narrowly tailored to serve a compelling government interest. However, the forum in this case is a limited public forum and a restriction on profanity at a public board meeting is certainly reasonable.

C. <u>The District's public participation policy does not bar speakers from mentioning the names of school board members.</u>

Plaintiffs do not, and more importantly cannot, assert that the District's public participation policy bars the mention of board members names. It appears that Plaintiffs are claiming such a "policy" based on a statement Board member McCall made following a recess. It should be noted that a "comment" made by an individual Board member does not constitute "policy," as Georgia law is clear that statement by an individual Board member cannot constitute the actions of the School District since members of boards of education do not act as individuals; instead, they act as a collective body. See O.C.G.A. § 20-2-61 ("Local board of education members should work together with the entire local board of education and **shall not have authority as independent elected officials** but shall only be

12

authorized to take official action as members of the board **as a whole**.") (emphasis added). Because the adoption of any policy is action of the Board, that adoption requires action of the Board as an entire body at an open meeting.

Furthermore, even if McCall's statement constitutes "policy," it is not viewpoint discrimination. Plaintiffs' arguments on this issue rests on the notion that the public should be able to criticize its elected officials—an argument, incidentally, that Defendants do not deny. In fact, a review of the videos of the two Board meetings at issue in this case shows that virtually every one of the many, many speakers criticized the Board members and at times the School Superintendent. Many speakers, including members of the Mama Bears, were extremely harsh and asserted that the Superintendent should be fired and the Board members should be voted out of office. The suggestion that their rights to "question the fitness" of Board members were restricted is astounding in light of what was expressed by all the speakers at the two meetings.

    D.    <u>The School District did not deny Plaintiffs' right to petition.</u>

Plaintiffs' right to petition claim rests entirely on the assertion that the School District imposed viewpoint restriction on Plaintiffs. As argued extensively above, there was no such viewpoint restriction. The suggestion that the rights of the Plaintiffs to petition were restricted is equally confounding, given that all

Plaintiffs, their members, and others were provided well over an hour at each meeting to address and petition the Board.

E. <u>Plaintiffs fail to demonstrate that the District's public participation policy is unduly vague or overbroad or that it constitutes prior restraint.</u>

As noted in Section B above, the District's Public Participation Policy and the Rules of Conduct for that Policy have been revised and will be voted on at the September Board meeting. That new Policy and Rules of conduct do not contain the provisions which Plaintiffs claim are unduly vague and overbroad. Regardless, Plaintiffs fail to meet their burden to demonstrate that the policy during the two Board meetings were unduly vague and overbroad.

Aside from quoting a few cases related to the vagueness doctrine, Plaintiffs do not demonstrate how the District's policy is unconstitutionally vague. Plaintiffs object to the portions of the policy related to profane, rude, defamatory, uncivil or personal attacks and generally argue that they are vague. However, as demonstrated above, no speaker was restricted at either Board meeting for rude, defamatory, uncivil or personal attacks, as plenty of those comments were made by multiple speakers, including Plaintiffs. Nor is there any evidence that anyone's viewpoint was suppressed at the two meetings for being uncivil, or rude, or defamatory, or were personal attacks. The only restriction was on reading out loud

14

sexually explicit, graphic passages. Moreover, Defendants contend that the District's policy is not vague, as a reasonable person attending the Board meeting would know what is and is not permitted.

Likewise, Plaintiffs fail to demonstrate that the public participation policy is overbroad. Plaintiffs contend that "Defendants are using overbroad terms to silence parents discussing books found in their school's library." [Doc. 2-1 at 31 (numbered 23). As with such similar assertions, this contention is baffling, given how many speakers, including Plaintiffs and the members of the group, expressed their vehement criticism of the Board Members, School District and its Superintendent, which at times bordered on disdain. There is no evidence that anyone was "silenced" at the two meetings, other than not able to read out loud sexually explicit, graphic passages.

Plaintiffs' prior restraint argument rests on the premise that the provisions in the District's policy are unconstitutional and requiring speakers to comply with such provisions constitute prior restraint. However, as argued above, the provisions are not unconstitutional. More importantly, Plaintiffs contend that the policy gives the Board Chair "unbridled discretions," perhaps to suggest that he violated speakers' First Amendment rights at the Board Meetings. However, as has been exhaustively shown by now, that simply did not occur.

**II. Plaintiffs fail to demonstrate irreparable harm, that the threatened injury to Plaintiffs outweighs any harm the proposed injunction might cause the School District, and that the requested injunction would not be adverse to the public interest.**

Despite having the burden to establish the last three elements Plaintiffs must demonstrate to obtain the "extraordinary and drastic remedy" of a preliminary injunction, Plaintiffs' arguments as to these three elements consist of ***exactly four*** total sentences quoting caselaw, without any further explanation.

Plaintiffs make no attempt to demonstrate how the prohibition of reading out loud sexually explicit, graphic passages from a book at a Board of Education meeting causes them irreparable harm. Defendants certainly cannot conceive what that harm would be. Nor can Plaintiffs argue that they face irreparable harm by not being able to express their viewpoint as to the book banning issue, as all of them, plus many other people, already did so at the two Board meetings referenced in the Complaint and also other Board meetings. Plaintiffs' mere citation of <u>Roman Cath. Diocese of Brooklyn v. Cuomo</u>, 141 S. Ct. 63, 67 (2020), for the general proposition that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," is not sufficient proof that

they face irreparable harm in this case.[5] Roman Cath. involved a governor's emergency executive order that imposed occupancy restrictions on houses of worship during the COVID-19 pandemic. In examining whether the executive order causes irreparable harm, the Court looked at a number of factors:

> If only 10 people are admitted to each service, the great majority of those who wish to attend Mass on Sunday or services in a synagogue on Shabbat will be barred. And while those who are shut out may in some instances be able to watch services on television, such remote viewing is not the same as personal attendance. Catholics who watch a Mass at home cannot receive communion, and there are important religious traditions in the Orthodox Jewish faith that require personal attendance.

Id. at 67-68. In this case, Plaintiffs fail to provide anything remotely similar to demonstrate irreparable harm to them.

Plaintiffs' arguments as to the last two elements consist entirely of quoting two cases for the general proposition that "neither the government nor the public has any interest in enforcing an unconstitutional ordinance" and "the public interest is served when constitutional rights are protected." [Doc. 2-1 at 32-33 (numbered

---

[5] Plaintiffs also cite Otto v. City of Boca Raton, Fla., 981 F.3d 854, 870 (11th Cir. 2020), which involves a city ordinance subject to strict scrutiny. The Court determined that the ordinances are an unconstitutional "direct penalization" of protected speech, and continued enforcement, "for even minimal periods of time," constitutes a per se irreparable injury. Id. It is not entirely clear why Plaintiffs cite this case, as no "penalization" is involved. To the extent Plaintiffs are claiming that they are concerned about being arrested, that would be a law enforcement matter. The School District certainly does not have any authority to arrest anyone.

24-25 on Plaintiffs' Brief)]. Yet again, Plaintiffs cannot articulate how a prohibition on reading out loud sexually explicit, graphic passages from a book is constitutionally protected. Instead, there is harm and disservice to the general public if Plaintiffs are allowed to read such passages in a public Board Meeting, which is also livestreamed on the internet.

## CONCLUSION

Plaintiffs have failed to show that their First Amendment rights were violated and cannot meet the standard for the "extraordinary and drastic remedy" of a preliminary injunction. For these reasons shown above, their Motion for Preliminary Injunction must be denied.

Respectfully submitted this 19th day of August, 2022.

## CERTIFICATION

Counsel certifies pursuant to Local Rule 5.1 that this document has been prepared in Times New Roman 14-point font with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch.

HARBEN, HARTLEY & HAWKINS, LLP

*/s/ Hieu M. Nguyen*
Hieu M. Nguyen
Georgia Bar No. 382526
Phillip L. Hartley
Georgia Bar No.: 333987

Aparesh Paul
Georgia Bar No. 362648

340 Jesse Jewell Parkway Ste. 750	ATTORNEYS FOR DEFENDANTS
Gainesville, Georgia 30501
Telephone: (770) 534-7341
Email: hnguyen@hhhlawyers.com
phartley@hhhlawyers.com
apaul@hhhlawyers.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on the 19th day of August, 2022, he electronically filed the *Defendants' Response to Plaintiffs' Motion for Preliminary Injunction* with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

HARBEN, HARTLEY & HAWKINS, LLP

***/s/ Hieu M. Nguyen***
Hieu M. Nguyen
Georgia Bar No. 382526

340 Jesse Jewell Parkway Ste. 750	ATTORNEY FOR DEFENDANTS
Gainesville, Georgia 30501
Telephone: (770) 534-7341
Facsimile: (770) 532-0399
Email: hnguyen@hhhlawyers.com