UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| MAMA BEARS OF FORSYTH COUNTY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WESLEY MCCALL, et al.,<br><br>    Defendants. | Case No. 22-cv-00142-RWS |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

### 1. Banning the public reading of books available in school libraries is viewpoint discrimination.

Defendants claim, in conclusory fashion, that their ban on reading from sexually explicit schoolbooks is not viewpoint-based, but cite no legal authority supporting their proposition. Opposing sexually explicit books in schools by reading from them in a way that is jarring or offensive is a constitutionally protected viewpoint. *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2299–300 (2019) (striking down regime that allowed "registration of marks when their messages

accord with, but not when their messages defy, society's sense of decency or propriety"). "[A]s the Court made clear in *Tam*, a law disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First Amendment." *Id.* at 2300–01 (citing *Matal v. Tam,* 137 S. Ct. 1744 (2017)).

It is understandable that school-board members might be uncomfortable with hearing those words—that is exactly the point. It is also doubly ironic that Defendants would seek to hide behind the argument that young children might hear the content of books made available in school libraries.

Defendants are grasping at straws. First, school-board meetings exist primarily to administer and discuss school-district business, which is a predominantly adult activity, for an overwhelmingly adult audience of parents, school district employees, and taxpayers. As such, the potential presence of young children cannot be used to sanitize adult discourse about schoolbooks. *See Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 804–05 (2011) ("Even where the protection of children is the object, the constitutional limits on governmental action apply."); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 74 (1983) ("The level of discourse reaching a mailbox simply cannot be limited to that which would be suitable for a sandbox"); *Butler v. Michigan,* 352 U.S. 380, 383-84, (1957) ("The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children.").

Second, there is no evidence in the record that young children, however defined, were present at the meetings in question or watching the livestream. Third, Defendants have not supported their claim that the books are available only in middle or high school libraries with any admissible evidence. Even if they had, the distinction they offer is not a free pass to censor views that make school board members uncomfortable.[1] The Mama Bears are trying to make their elected officials uncomfortable; and our Constitution gives them the right to do so.

### 2. Defendants may not avoid constitutional review of their policy by playing a shell game with vague terminology.

Defendants also exhibit unconstructive behavior by proposing to change the civility provision of their policy to read:

> The use of obscene, profane, physically threatening or abuse remarks will not be allowed. Loud or boisterous conduct or comments by speakers or member of the audience are not allowed.

ECF No. 17 at 11 (citing to links for proposed policy).

---

[1] Defendants' Huckleberry Finn example proves the opposite of what they intend. If a BLM-affiliated parent wants to read from that book to make a point about why it shouldn't be in the school library, that parent has a right to do so.

They propose to keep the ban on "profane" comments, but are adding a ban on "obscene" comments and substituting "abusive" for "rude, defamatory remarks, and personal attacks." This is an invitation to play whack-a-mole with a thesaurus and policy terms. Every time a plaintiff challenges a term, the Defendants would just find another subjective term to try to keep doing what they want.

In addition, Defendants seek to introduce a new concept of a "loud and boisterous" comment, meaning presumably that speakers are not allowed to care too much about the topic of their speech, nor is the audience allowed to react. This added terminology appears to be designed to stifle the Mama Bears for being a little too effective at eliciting a reaction. Defendants "may not insulate a law from charges of viewpoint discrimination by tying censorship to the reaction of the speaker's audience." *Tam*, 137 S. Ct. at 1766 (Kennedy, J., concurring); *see also Fort Lauderdale Food not Bombs v. City of Fort Lauderdale,* 11 F.4th 1266, 1294 (11th Cir. 2021) (government may not regulate speech because it causes offense or makes listeners uncomfortable or because it might elicit a violent reaction); *McMahon v. City of Panama City Beach*, 180 F. Supp. 3d 1076, 1109–10 (N.D. Fla. 2016) (collecting other cases discussing heckler's veto).

All of these terms share similar characteristics: they are highly subjective and open to wide interpretation. How boisterous is too boisterous? Is someone too loud if they are as loud as the meeting chair, interrupting and chiding speakers to be "respectful?" Speakers are left to wonder, and if they don't want to suffer the same fate as Alison Hair, then they may well choose to hedge or trim their remarks, or speak blandly; and in so doing make their words less effective.

In situations like these, officials' discretion to limit speech "must be guided by objective, workable standards." *Minn. Voters All. v. Mansky,* 138 S. Ct. 1876, 1891 (2018). Both the old and the new civility provisions lack the objective qualities of time limits or requirements that attendees not interrupt other speakers.

Defendants' proposed changes leave the challenged parts of the old policy substantially undisturbed and fail to fundamentally alter the original policy. *See Keister v. Bell*, 29 F.4th 1239, 1250–51 (11th Cir. 2022); *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992) ("The scheme still involves the regulation of speech and conduct, and it still operates in the same allegedly unconstitutional fashion"). Contrary to mooting the case, Defendants' actions demonstrate their intent to continue censoring critics through the use of a partly revised civility clause and underscore the need for this Court to act to

secure Mama Bears' rights to speak at FCS board meetings. New language or not, Alison Hair remains banned from school board meetings, and the Mama Bears are all still forbidden from doing what they wish to do: read aloud from school library books at school board meetings.

Moreover, the Eleventh Circuit is appropriately skeptical of policy changes that come late in the game and appear to be an attempt to manipulate jurisdiction. *Rich v. Fla. Dep't of Corr.*, 716 F.3d 525, 531–32 (11th Cir. 2013) (claims about kosher prison meals not mooted where timing and scope of new meal plan made it appear state was attempting to manipulate jurisdiction). Defendants' late-breaking policy change is just such an attempt.

### 3. Alison Hair was banned because of the content of her remarks and because they made public officials uncomfortable.

Defendants repeatedly claim that no one was silenced "at either Board meeting for rude, defamatory, uncivil or personal attacks . . . ." ECF No. 17 at 14–15. But this claim ignores that interrupting and terminating comments is a form of censorship. Moreover, Defendants' argument wholly ignores that the entire board signed a letter banning Alison hair from future school board meetings for violating Rule #9, the policy's civility clause. ECF 2-5 at 2.

Excluding someone from even attending meetings vitiates both their right to speak and petition. That ban remains in place.

### 4. Plaintiffs' claims are also not moot because they seek relief for past harms.

Even if this Court were to find that the proposed new policy moots their claim for injunctive relief, Plaintiffs are still requesting a declaratory relief and nominal damages arising from Defendant's past illegal behavior. *Keister,* 29 F.4th at 1250–51 ("Ceasing an offending policy going forward does not redress an injury that occurred in the past."). Moreover, the Supreme Court has recognized that nominal damages serve to provide symbolic compensation for harms where a plaintiff cannot or has chosen not to quantify the harm in economic terms. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). Moreover, Alison Hair's ban from attending school-board meetings remains in place, and the Mama Bears are still not free to read school library books at school board meetings. As a result, this case presents a live controversy.

Dated: September 2, 2022

Respectfully submitted,

\_\_*s/Endel Kolde*_____
Endel Kolde (*pro hac vice*)

INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW,
Suite 801
Washington, DC  20036
202-301-3300
dkolde@ifs.org

\_\_*s/Erika Birg*_____
Erika C. Birg
Georgia Bar No. 058140
NELSON MULLINS RILEY
& SCARBOROUGH, LLC
Atlantic Station Suite 1700
201 17th Street NW
Atlanta, GA 30363
404-322-6110
erika.birg@nelsonmullins.com

*Counsel for Plaintiffs*

CERTIFICATE OF COMPLIANCE

This brief complies with the margin, typeface requirements and spacing requirements of LR 5.1 because this brief has been prepared in double-spaced typeface using Microsoft Word in 13-point in Century Schoolbook.

*s/Endel Kolde*
Endel Kolde
Attorney for Plaintiffs